UNITED STATES DISTRICT COURT
FOR THE
MIDDLE DISTRICT OF PENNSYLVANIA

ROBIN PARMELEE,                :
                                  :
        Petitioner            :
                                    :
     v.                      :  CIVIL NO. 3:CV-07-2328
                                    :
JOSEPH PIAZZA,              :  (Judge Kosik)
                                    :
        Respondent      :

# M E M O R A N D U M

Before the court is the habeas corpus petition of Robin Parmelee, filed pursuant to 28 U.S.C. § 2254.  Parmelee is confined at the State Correctional Institution at Coal Township, Pennsylvania.  In the petition, Parmelee challenges his 2001 conviction on multiple counts of Rape, Involuntary Deviate Sexual Intercourse, Sexual Assault, Statutory Sexual Assault, Aggravated Indecent Assault, Indecent Assault, Incest and Corruption of Minors involving his three (3) minor daughters.  He is currently serving an aggregate sentence of 105 to 210 years of incarceration.  He raises eight grounds (8) for relief in his petition.  On March 5, 2008, an Order was issued advising Petitioner that he could choose to either withdraw the instant petition without prejudice to file another § 2254 petition raising all grounds for relief from his conviction, or have the court rule on his petition as filed.  (Doc. 3.)  He was granted

thirty (30) days within which to notify the court of his decision and advised that the failure to do so would result in the petition being ruled on as filed.  Because no notification was ever filed by Petitioner, an Order to Show Cause was issued on April 10, 2008, directing Respondent to answer the allegations in the petition and supporting Memorandum of Law.  (Doc. 4.)  A response to the petition and supporting Memorandum was thereafter filed on April 30, 2008.  (Docs. 8, 9.)  No traverse has been filed.  The petition is ripe for consideration and, for the reasons that follow, will be denied.

## I.     Background

The following background is extracted from the May 20, 2003, opinion of the Pennsylvania Superior Court on direct appeal by Petitioner from his judgment of sentence following conviction of nine (9) counts of rape, seven (7) counts of involuntary deviate sexual intercourse, nine (9) counts of sexual assault, nine (9) counts of statutory sexual assault, six (6) counts of aggravated indecent assault, thirteen (13) counts of indecent assault, three (3) counts of incest, and four (4) counts of corruption of minors.

> This matter arose from allegations that, over several years, Parmelee committed repeated sexual assaults against his minor daughters, T.P., S.P., and N.P.  T.P told her mother, K.P., of Parmelee's sexual assaults in mid-May of 2000. Thereafter, K.P. contacted law enforcement authorities in Lackawanna County and Wyoming County.  During the course of the investigation, a forensic pediatrician, Dr. Andrea Taroli, examined T.P., S.P. and N.P.  Dr. Taroli's

examination of T.P. revealed significant scar tissue and clefts in her vagina and anus that were consistent with tears and lacerations caused by traumatic penetration. Due to the nature and age of the scars, Dr. Taroli concluded that the injuries to T.P. occurred prior to the onset of puberty. Dr. Taroli's examination of S.P. likewise revealed evidence of extensive vaginal scarring and concavities that were attributable to traumatic penetration that occurred in the midst of puberty. N.P.'s genital examination was normal and did not reveal injury to her genitalia.

Police arrested Parmelee on June 14, 2000, and after a preliminary hearing, a district magistrate bound the case over for trial. Prior to trial, Parmelee filed a "Motion to Inspect the file of Lackawanna County Children and Youth Services Regarding [T.P] [S.P.] and [N.P.] (hereinafter "Motion to Inspect"). Upon review of Parmelee's Motion to Inspect, the trial court ordered CYS to produce the requested case files in chambers and conducted an *in camera* inspection. The court determined, however, that the content of the case files was not material to Parmelee's defense and, consequently, refused to grant Parmelee or his counsel direct access to the records.

Thereafter, the court convened a jury trial, at which each of the three alleged victims testified concerning Parmelee's acts. T.P. testified that the first incident of abuse occurred when she was age 5 or 6. At that time, Parmelee lured her into the woods, commanded her to disrobe, fondled her and rubbed his penis against her exposed vagina. T.P. testified that she did not remember Parmelee abusing her again until she was in the sixth or seventh grade. At that time, Parmelee fondled T.P.'s breasts, penetrated her vagina with his fingers and engaged in forcible vaginal and anal intercourse with T.P. Parmelee forced T.P. to engage in these acts by striking her, throwing objects at her and committing other threatening behavior against T.P.

T.P. testified further that the incidents of abuse continued on at least a weekly basis through 2000. T.P.'s testimony

recounted the location of the offenses, the years of their occurrence and the conditions surrounding the perpetration of the abuse.  Parmelee molested T.P. and N.P. simultaneously, and he forced T.P. to choose whether she or her sisters would be victimized.  T.P. testified that if she resisted Parmelee he would beat her and would threaten to kill her if she told anyone about his sexual assaults.

S.P. testified that Parmelee began molesting her on July 11, 1998.  On that date, Parmelee awakened S.P. from sleep, brought her into his bedroom and fondled her breasts and vagina.  Approximately two days later, Parmelee forced S.P. to perform oral sex on him.  Parmelee continued to fondle S.P. on a weekly basis and began to have sexual intercourse with her later in 1998, which continued until T.P. informed her mother of Parmelee's sexual assaults.  S.P. testified that Parmelee sexually assaulted her and N.P. simultaneously at a Wyoming County campground in 2000.  Parmelee threatened physical harm to S.P. if she informed anyone about his sexual assaults.

Following trial, the jury found Parmelee guilty with respect to T.P. and S.P. of the multiple offenses listed above.  In addition, the jury found him guilty of two counts of corruption of minors against N.P. but acquitted him of all other charges.  Consistent with Parmelee's multiple sex-related offenses, the trial court ordered him to undergo an assessment by the Sexual Offenders Assessment Board to determine whether Parmelee should be classified as a sexually violent predator pursuant to 42 Pa.C.S. §§ 9791-9799.  After evaluation, the Sexual Offenders Assessment Board concluded that Parmelee was not a sexually violent predator.

On January 25, 2002, following the assessment of the Sexual Offenders Assessment Board, the trial court imposed an aggregate sentence of 105 years' to 210 years' incarceration for the following convictions: nine counts of rape; seven counts of IDSI; six counts of aggravated indecent assault; thirteen counts of indecent assault; six

counts of incest, and two counts of corruption of minors.
The trial court found that Parmelee's nine convictions for
statutory sexual assault and sexual assault merged with the
rape convictions for purposes of sentencing.

(Doc. 9, Ex. E, Pa. Super. Op. at 2-5.)

Petitioner filed a timely direct appeal to the Pennsylvania Superior Court on

February 22, 2002.  In the appeal, he raised the following grounds: (1) trial court

error, after holding an *in camera* hearing, in failing to disclose/make available the

CYS records/reports and the ineffective assistance of trial counsel in failing to move

for the disclosure of the reports/records; (2) ineffective assistance of trial counsel in

failing to move to preclude/object to the testimony of Dr. Taroli regarding statements

given by the victims; (3) ineffective assistance of trial counsel in failing to request a

"prompt complaint" instruction; (4) ineffective assistance of trial counsel in failing to

object to/request a curative instruction or move for a mistrial concerning the

testimony of Trooper Gilgallon as to the credibility of the facts/statements of the

victims; and (5) sufficiency of evidence by the Commonwealth in sustaining their

burden of proof for all counts for which Petitioner was convicted.

On May 20, 2003, the Superior Court denied the direct appeal and affirmed the

judgment of sentence, but did not rule on the ineffective assistance claims.  Instead,

the court dismissed those claims without prejudice to Petitioner to raise the claims on

collateral review by way of a Post-Conviction Relief Act (PCRA) petition.

On May 13, 2004, Petitioner filed a PCRA petition in the Court of Common Pleas of Lackawanna County.  An evidentiary hearing was conducted on August 17, 2004.  In the PCRA petition, Petitioner alleged five (5) instances of ineffective assistance of trial counsel and two (2) claims of ineffectiveness by his appellate counsel.  These grounds were as follows: (1) failure of trial counsel to seek the disclosure of the victims' CYS records; (2) failure of trial counsel to object to certain testimony provided by Dr. Taroli referencing statements made to her by the victims during her gynecological examination of them; (3) failure of trial counsel to request a prompt complaint jury instruction; (4) failure of trial counsel to object to the testimony of Trooper Gilgallon and request a cautionary instruction; (5) failure of trial counsel to call Luke Brown, members of the Carbondale Police and representatives of the Carbondale Area School District as witnesses; (6) failure of appellate counsel to challenge the aggregate sentence of 105 to 210 years in prison as manifestly excessive or clearly unreasonable under the circumstances; and (7) failure of appellate counsel to file a petition for allowance of appeal with the Supreme Court of Pennsylvania after the Superior Court of Pennsylvania affirmed his judgment of sentence.

On June 30, 2005, the PCRA court denied the petition.  A timely appeal was filed with the Pennsylvania Superior Court. The Superior Court affirmed the PCRA court on all but one (1) count.  The court found that Petitioner's prior appellate

counsel was ineffective for failing to file a Petition for Allowance of Appeal in the

Pennsylvania Supreme Court.  The Superior Court remanded the case for

reinstatement of Petitioner's direct appeal rights nunc pro tunc.  Petitioner thereafter

filed a Petition for Allowance of Appeal, which the Supreme Court denied on

February 28, 2007.

Petitioner thereafter filed the instant habeas corpus petition on December 17,

2007.  In the petition, he raises the following ineffective assistance of trial counsel

grounds: allowing the consolidation of additional charges to be tried as one; failing to

raise issue of/request a complete CYS file for inspection and review; failing to object

to Commonwealth's witnesses testimony where the shared information was from

another's report; failing to request a "prompt complaint" instruction; failing to

object/request a curative instruction with regard to the testimony of Trooper

Gilgallon; failing to renew objection to Dr. Taroli's identification of Petitioner as

causer of harm, testimony which was previously ruled inadmissible.  Petitioner also

raises the grounds of abuse of discretion by the trial court in allowing testimony it had

previously ruled to be inadmissible and ineffective assistance of appellate counsel in

failing to raise the issue of the excessive sentence imposed.

## II.   Applicable Law

Section 2254 of Title 28, United States Code, provides that the district court

"shall entertain an application for a writ of habeas corpus on behalf of a person in

custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States."  See 28 U.S.C. § 2254(a).  Properly presented, exhausted claims for relief that have been adjudicated on the merits by the state courts are subject to review under the standard of whether they are "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," 28 U.S.C. § 2254(d)(1), or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding."  28 U.S.C. § 2254(d)(2).  A state court decision will be an "unreasonable application of" Supreme Court precedent if it "correctly identifies the governing legal rule but applies it unreasonably to the facts of a particular prisoner's case."  Williams v. Taylor, 529 U.S. 362, 408-409 (2000).  However, "a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly.  Rather, that application must also be unreasonable."  Id. at 411.

Under 28 U.S.C. § 2254(e)(1), a federal court is required to presume that a state court's findings of fact are correct.  A habeas petitioner must rebut this presumption by clear and convincing evidence.  See 28 U.S.C. § 2254 (e)(1); Miller-El v. Cockrell, 537 U.S. 322, 341 (2003).  This presumption of correctness applies to both explicit

and implicit findings of fact.  Campbell v. Vaughn, 209 F.3d 280, 286 (3d Cir. 2000).

## III.   Discussion

### A.    Procedurally Defaulted Claims

Two of the ineffective assistance of trial counsel claims[1] and the trial court abuse of discretion claim raised by Petitioner are procedurally defaulted without excuse. Habeas corpus relief cannot be granted unless available state court remedies on the federal constitutional claims have been exhausted, or there is an absence of available state corrective process, or circumstances exist that render such process ineffective to protect the rights of the applicant.  See 28 U.S.C. § 2254(b)(1).  This statutory provision has been interpreted to require the federal habeas petitioner to present both the facts and legal theory associated with each claim through "one complete round of the State's established appellate review process."  O'Sullivan v.

---

[1]  Those two claims are trial counsel's: (1) allowance of the consolidation of additional charges to be tried as one and (2) failure to object to the Commonwealth's witnesses' testimony where the shared information was from another's report. Petitioner states in his petition, and Respondent agrees that one of the other grounds raised is not exhausted and is procedurally defaulted - the ground of trial counsel's ineffectiveness for failure to renew objection to Dr. Taroli's identity of the accuser. In reviewing the opinion of the PCRA court, however, this court is of the opinion that while said ground was not specifically set forth as a separate issue by the PCRA court, it was addressed and denied by that court during the course of its discussion of Dr. Taroli's testimony. (See Doc. 9, Ex. F at 25-27.)  The Pennsylvania Superior Court thereafter affirmed the PCRA court's decision.  Accordingly, in the interests of justice to this pro se Petitioner, this court will address said ground on the merits despite Petitioner's statement in his habeas petition that said ground was not raised on direct appeal or in his PCRA petition.

Boerckel, 526 U.S. 838, 844-845 (1999); Holloway v. Horn, 355 F.3d 707, 714 (3d Cir. 2004).  To satisfy this requirement, a petitioner must demonstrate that the claim raised was fairly presented to the state's highest court, either on direct appeal or in a state post-conviction proceeding.  Lambert v. Blackwell, 134 F.3d 506, 513 (3d Cir. 1997). It is not necessary for a petitioner seeking federal habeas relief to present his federal claims to state courts both on direct appeal and in PCRA proceedings. Swanger v. Zimmerman, 750 F.2d 291, 295 (3d Cir. 1984).  In addition, the state court must be put on notice that a federal claim is being asserted.  Keller v. Larkins, 251 F.3d 408, 413 (3d Cir. 2001).

The exhaustion requirement is not a mere formality.  It serves the interests of comity between federal and state systems by allowing the state an initial opportunity to determine and correct any violation of a prisoner's federal rights.  Crews v. Horn, 360 F.3d 146, 151 (3d Cir. 2004).

When a habeas petitioner fails to obtain consideration of a claim by a state court, either due to the petitioner's failure to raise that claim before the state courts while state-court remedies are still available, or due to a state procedural rule that prevents the state courts from reaching the merits of the petitioner's claim, that claim is procedurally defaulted for purposes of federal court habeas review.  Bronshstein v. Horn, 404 F.3d 700, 707 (3d Cir. 2005)(quoting Coleman v. Thompson, 501 U.S. 722, 729 (1991))("the procedural default doctrine precludes a federal habeas court

from 'review[ing] a question of federal law decided by a state court if the decision of that court rests on a state law ground that is *independent* of the federal question and *adequate to* support the judgment.'")(emphasis in original). In situations where returning an unexhausted claim to the state courts would be futile because of a state procedural bar, the exhaustion requirement is excused.  Slutzker v. Johnson, 393 F.3d 373, 379-380 (3d Cir. 2004).  Nonetheless, while a prisoner's procedural default may excuse exhaustion, it does not automatically entitle him to federal court review of the merits of his claim.

A federal court can reach the merits of procedurally defaulted claims only if the petitioner demonstrates either "cause and prejudice" in connection with the procedural default, or that a fundamental miscarriage of justice would result if his claim was not reviewed.  See Edwards v. Carpenter, 529 U.S. 446, 451 (2000); Wenger v. Frank, 266 F.3d 218, 225 (3d Cir. 2001); Lines v. Larkins, 208 F.3d 153, 166 (3d Cir. 2000).  To satisfy the first exception, petitioner must show: (1) cause for his failure to raise his claim in state court; and (2) prejudice to his case as a result of that failure.  Coleman v. Thompson, 501 U.S. 722, 750 (1991).  To demonstrate "cause" for a procedural default, the petitioner must show that something "external" to the defense impeded petitioner's efforts to comply with the state's procedural rule.  Murray v. Carrier, 477 U.S. 478, 488 (1986).  Once "cause" has been successfully demonstrated, petitioner must then prove "prejudice."  Prejudice must be something

11

that "worked to [petitioner's] actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." Id. at 494.

Alternatively, a federal court may excuse a procedural default when the petitioner establishes that failure to review the claim will result in a fundamental miscarriage of justice. See Werts v. Vaughn, 228 F.3d 178, 192-193 (3d Cir. 2000). A credible allegation of "actual innocence" constitutes a "miscarriage of justice" that enables federal courts to hear the merits of otherwise procedurally defaulted habeas claims. Hubbard v. Pinchak, 378 F.3d 333, 338 (3d Cir. 2004). The fundamental miscarriage of justice exception, as defined by the United States Supreme Court, is confined to cases of actual innocence as compared to legal innocence, where the petitioner can show that it is more likely than not that no reasonable juror would have found him guilty beyond a reasonable doubt in light of new evidence. Schlup v. Delo, 513 U.S. 298, 327 (1995). "To be credible," a claim of actual innocence must be based on reliable evidence not presented at trial. Id. at 324.

In the instant case, there is no question that the two ineffective assistance of trial counsel grounds noted above and the trial court error ground were never raised in the state courts and, are therefore, unexhausted and procedurally defaulted. The court now turns to the analysis of whether the procedural default can be excused. With respect to two of the unexhausted issues, Petitioner states that these claims were not raised in the state courts because counsel failed to raise the issues on appeal and/or in

any collateral petitions.  (Doc. 1 at 6, 11.)  He does not offer any explanations with

regard to the other unexhausted claims.  Regardless, he fails to establish the cause

necessary to excuse a procedural default.  Attorney error rising to the level of a Sixth

Amendment violation under Strickland v. Washington, 466 U.S. 668(1994) may

establish cause, but such ineffectiveness must first have been properly presented to

the state courts as an independent claim.  Murray v. Carrier, 477 U.S. 478,488-89

(1986); Edwards v. Carpenter, 529 U.S. 446, 452 (2000).  Petitioner never raised the

ineffective assistance of his direct appeal counsel for failing to raise the specific

issues in his PCRA petition, and thus has procedurally defaulted this claim of cause.

See Edwards, 529 U.S. at 453(holding that "an ineffective-assistance-of-counsel

claim asserted as cause for the procedural default of another claim can itself be

procedurally defaulted").  Nor can Petitioner show cause for procedurally defaulting

these specific claims of direct appellate counsel's ineffectiveness for failing to raise

the issues.  The only claim of excuse that Petitioner would have for failing to raise the

issues before the PCRA court is that his PCRA attorney was ineffective during the

PCRA proceedings for failing to raise in front of the PCRA trial court the issue of

direct appeal counsel's ineffectiveness.  However, claims of ineffectiveness of post

conviction relief counsel cannot serve as cause to excuse a procedural default because

there is no federal constitutional right to counsel at the stage of state post conviction

proceedings.  Coleman v. Thompson, 501 U.S. 722, 757 (1991)("Because [the

13

petitioner] had no right to counsel to pursue his appeal in state habeas, any attorney error that led to the default of [his] claims in state court cannot constitute cause to excuse the default in federal habeas".)  Accordingly, Petitioner cannot establish cause for his procedural defaults on two of his ineffective assistance grounds and his trial court error ground.

Nor is Petitioner able to establish a miscarriage of justice if these grounds in his habeas petition are not considered by this court.  There is overwhelming evidence of his guilt and he cannot possibly establish his actual innocence of the crimes.

### B.    Merits of Remaining Exhausted Grounds

The claims which remain are exhausted and all allege the ineffectiveness of counsel.  The Sixth Amendment guarantees criminal defendants the right to the effective assistance of counsel.  Strickland v. Washington, 466 U.S. 668, 685-86 (1984).  A defendant alleging ineffective assistance must satisfy the familiar two-part test set forth in Strickland:

> First, the defendant must show that counsel's performance was deficient.  This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment.  Second, the defendant must show that the deficient performance prejudiced the defense.  This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

Id. at 687.  To show deficient performance, "the defendant must show that counsel's representation fell below an objective standard of reasonableness ... under prevailing

14

professional norms." Id. at 687-88.  "Judicial scrutiny of counsel's performance must be highly deferential ... [and] a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Id. at 689.  To demonstrate prejudice, the defendant must show that counsel's deficient performance "actually had an adverse effect on the defense." Id. at 693.  "It is not enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceeding." Id.  Rather, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694.

Where state courts have considered a claim for ineffective assistance of counsel, the federal court's review of the claim is governed by 28 U.S.C. § 2254(d)(1).  Thus, a federal court does not render an independent judgment, but rather determines whether the state court decision is contrary to or involved an unreasonable application of the Strickland test.  See 28 U.S.C. § 2254(d)(1); Rompilla v. Horn, 545 U.S. 374, 380 (2005).

The Third Circuit Court of Appeals has held that the ineffective assistance standard applied by the Pennsylvania courts is materially similar to that articulated in Strickland.  See Werts v. Vaughn, 228 F.3d 178, 204 (3d Cir. 2000).  Given that the Pennsylvania state courts applied the correct standard, their opinion is not "contrary

to" federal law.  Henderson v. DiGuglielmo, 138 Fed. Appx. 463, 469 (3d Cir. 2005).

The issue then is whether the Pennsylvania court rulings on Petitioner's remaining

ineffective assistance claims constitute unreasonable applications of governing

federal law.  Each of the exhausted grounds will now be addressed by the court.

### 1.  Trial counsel's failure to request a complete file of CYS for inspection and review[2]

_____Petitioner contends that counsel was ineffective for seeking disclosure of

records from Children and Youth Services ("CYS") based upon Commonwealth v.

Ritchie, 509 Pa. 357, 502 A.2d 148 (1985), rev'd, 480 U.S. 39 (1987), rather than

pursuant to Section 6340(b) of the Child Protective Services Law, 23 Pa. C.S. §

6340(b), and Commonwealth v. Kennedy, 413 Pa. Super. 95, 604 A.2d 1036 (1992),

app. denied, 531 Pa. 638, 611 A.2d 711 (1992).  This issue was raised in the PCRA

petition and on appeal from the denial of the claim by the PCRA court.  The

Pennsylvania appellate courts affirmed.

The backdrop for this claim is as follows.  Petitioner's original counsel testified

during the PCRA hearing that she filed a motion to inspect the minor victims' CYS

---

[2] While this ground, as stated in the habeas petition, is vague and does not appear to be the same issue as presented in the state courts, Petitioner's discussion of the issue in his supporting Memorandum of Law suggests that it is the same issue previously exhausted in the state courts regarding the alleged right to inspect the CYS records of the victims.  As such, in light of Petitioner's pro se status and the liberal reading afforded to such filings, see Haines v. Kerner, 404 U.S. 519, 520-21 (1972) the court will address this claim on the merits herein.

records "under [the] authority of Com. v. Ritchie, 509 Pa. 357, 502 A.2d 148 (1985),"
and requested that the defendant be allowed "to inspect the records of Lackawanna
County Children and Youth Services regarding any alleged sexual offenses
purportedly committed upon [T.M.P.], [S.A.P.] and [N.J.P.] or in the alternative for
the Court to conduct an *in camera* inspection of said records and determine what this
defendant should be allowed to receive." (Doc. 9, Ex. F, PCRA Op. at 14.)  On
January 10, 2001, an order was issued by Judge Michael J. Barrasse directing CYS to
forward its files to his office "for an *in camera* inspection to determine if there are
any exculpatory materials for the defendant."  (Id.)  While apparently no order was
ever issued denying counsel's request to inspect the records, a call was made to
counsel from the judge's office stating that none of the CYS records contained
discoverable exculpatory material.

    In addressing an ineffective assistance of counsel claim, "[a] court can choose
to address the prejudice prong before the ineffectiveness prong and reject an
ineffectiveness claim solely on the ground that the defendant was not prejudiced."
Rolan v. Vaughn, 445 F.3d 671, 678 (3d Cir. 2006).  "The object of an ineffective
assistance claim is not to grade counsel's performance.  If it is easier to dispose of an
ineffective assistance claim on the ground of lack of sufficient prejudice, which we
expect will often be so, that course should be followed."  Id.

    In analyzing Petitioner's ineffective assistance claim, the PCRA court set forth

a thorough discussion of the Ritchie and Kennedy cases as well as the relevant

sections of the CPSL statute which will not be reiterated herein.  Suffice it to say that

the United States Supreme Court in granting certiorari in Richie concluded that the

Pennsylvania Supreme Court erred in holding that defense counsel must be allowed to

examine the CYS files.  Ritchie, 480 U.S. 39, 59 (1987).  The Court reasoned that a

defendant's interest in ensuring a fair trial can be fully protected by requiring that the

CYS files be submitted only to the trial court for *in camera* review.  Id.  Such review,

without access of the records by defense counsel, serves a defendant's interest, while

protecting the confidentiality of those involved in child-abuse investigations.

    With this said, the PCRA court then addressed the relevant sections of the

CPSL which govern the confidentiality of CYS records as well as the release of

information contained in said reports which is deemed confidential.  Section 23 Pa.

C.S. § 6340 addresses the individuals that may receive such confidential reports and

regulates the release of such information to the subject of a child abuse report,

allowing said person to receive a copy of all information, with specified exceptions,

contained in the Statewide central register or in any report filed pursuant to section

6313 of the statute.  (Id. at 17.)

    The PCRA court went on to discuss the Kennedy case wherein, on remand, the

Pennsylvania Supreme Court distinguished the Ritchie case as only analyzing the

discovery of CYS information under § 6340(a) rather than subsection (b), and held

that a defendant is entitled to access to CYS records, excluding information concerning the identity of the reporter of the suspected abuse, and finding that an *in camera* review by the trial court was too restrictive.  The PCRA court also addressed the later case of Commonwealth v. Reed, 435 Pa. Super, 36, 644 A.2d 1223 (1994) app. denied, 540 Pa. 580, 655 A.2d 512 (1995), which found that the Ritchie requirement of an *in camera* inspection applied with equal force under Pennsylvania's state confrontation clause and was sufficient in the Reed case to protect the defendant's right to cross-examine his victim and the state's right to keep this type of information confidential.  Noteworthy, however, is the fact that the defendant in Reed was not the subject of the CYS report sought to be discovered, thereby not implicating subsection (b) of Section 6340.  Accordingly, Reed had no effect on the holding of Kennedy which found that a defendant who is a subject of a child abuse report must be granted direct access to CYS reports and that an *in camera* review by the court was too restrictive.

With this precedential backdrop, the PCRA court analyzed Petitioner's claim that counsel was ineffective for failing to demand the right to personally inspect the CYS records in accordance with Section 6340(b) of the CPSL and the holding in Kennedy.  The PCRA court found, however, that it was unnecessary to determine whether Petitioner's claim had any arguable merit or whether there was a reasonable basis for agreeing to an *in camera* review since Petitioner had not demonstrated the

prejudice necessary to succeed with an ineffectiveness claim.  (Doc. 9, Ex. F, PCRA Op. at 20.)

The rationale behind this holding was as follows.  As fully set forth in the opinion of the PCRA court, pursuant to Section 6340(b) of the CPSL and Kennedy, a subject of a child abuse report is entitled only to that information which is "contained in the Statewide central register or in any report filed pursuant to Section 6313 (relating to reporting procedure)." 23 Pa. C.S.A. § 6340(b).  The PCRA court then set forth the thirteen (13) categories of specific information contained in the Statewide central register that Petitioner would be entitled to.  This information includes items such as: the names, social security numbers, ages and sex of the subjects of the reports; the dates, nature, location and extent of the alleged suspected abuse; the addresses of the subjects of the report; the source of the report; and information regarding any legal proceedings and criminal investigations. 23 Pa. C.S. § 6336(a). (Doc. 9, Ex. F at 20.) The PCRA court also set forth the information Petitioner would have been entitled to which would be that required to be contained in a report filed pursuant to Section 6313.  Much of this information is identical to the above, and also includes actions taken by the reporting source such as photographs and x-rays.  (Id. at 21.)

The PCRA court found no prejudice to exist to Petitioner due to counsel's failure to demand a personal review of the CYS records because (1) much of the

information to which he was entitled to review was already within his personal

knowledge such as the names, ages, addresses, family composition of the children,

status of existing legal proceedings, etc. and (2) the remaining information to which

he would have been entitled was contained in the CYS form "CY-104", the

Pennsylvania State Police reports, Dr. Taroli's reports and other materials produced

by the Commonwealth during the course of pre-trial discovery.  As such, even if

counsel should have requested a personal inspection because there was certain

information to which Petitioner would have been entitled to inspect and review, no

prejudice resulted by counsel's failure to make such a request in that all of the

information to which Petitioner was entitled was either known to or available to

Petitioner.

Further, the PCRA court found that no prejudice existed because the jury

convicted Petitioner of only those offenses for which there was corroborating

gynecological proof of a sexual assault and nothing that was contained in the CYS

records would have altered such proof.  Accordingly, Petitioner had not demonstrated

a reasonable probability that the outcome of his trial would have been different if his

counsel had been granted direct access to the CYS records.  The Pennsylvania

appellate courts affirmed this holding.

Based upon a review of the record, it cannot be said that the state court's

rejection of Petitioner's claim of ineffective assistance of counsel is an unreasonable

application of the Supreme Court precedent set forth in <u>Strickland</u>.  The state courts'

basis for finding that Petitioner has not established the prejudice element cannot be

found to be unreasonable based upon the record.  Relief on this habeas claim is

therefore not warranted.

### 2.  Appellate counsel's failure to challenge the excessive sentence

Petitioner maintains that appellate counsel was ineffective in failing to

challenge his excessive sentence on direct appeal.  The sentencing judge imposed

consecutive sentences on Petitioner's conviction of numerous crimes involving

sexual violence to his minor children.  The sentences fell within the standard range of

the sentencing guidelines and resulted in a sentence of 105 to 210 years

imprisonment.  It is Petitioner's argument the appellate counsel was ineffective in not

challenging this sentence as excessive in that it resulted in "virtually a Life Sentence

so manifestly excessive as to constitute too severe a punishment."  (Doc. 1, Pet.,

Mem. at 16.)  Petitioner maintains that any explanation offered by appellate counsel

at the PCRA hearing for not challenging the sentence was inadequate.

This issue was addressed by the PCRA court, as well as by the Pennsylvania

Superior Court.  Following an evidentiary hearing, the PCRA court started from the

point that sentencing is a matter vested in the sound discretion of the sentencing

judge, and will not be disturbed absent a manifest abuse of discretion - - a finding

which involves the court's ignorance or misapplication of the law, exercise of

partiality, prejudice, bias or ill will, or issuance of a manifestly unreasonable decision.
See Com. v. Hyland, 875 A.2d 1175, 1186 (Pa. Super. 2005). A substantial question
exists only if the sentence is inconsistent with the Sentencing Code or contrary to the
fundamental norms underlying the sentencing process, matters evaluated on a case-
by-case basis. Id.

In evaluating Petitioner's claim, the PCRA court noted that the factors a
sentencing court is required to consider in imposing a sentence and the fact that the
statutory factors, the PSI report and other information contained therein are used in
imposing Petitioner's sentence.  (Doc. 9, Ex. F, PCRA Op. at 39.)  The PCRA court
went on to contrast Pennsylvania cases where Defendants had argued the imposition
of excessive sentences and found, based upon state law, no valid basis for appellate
counsel to challenge Petitioner's sentence on direct appeal in light of the multitude of
crimes of which he was convicted involving sexual violence toward children and the
required statutory factors considered and  materials reviewed by the trial court prior
to imposing the sentence.

On appeal from this decision, the Pennsylvania Superior Court agreed with the
PCRA court that appellate counsel was not ineffective for failing to challenge the
discretionary aspects of Petitioner's sentence on direct appeal.  However, the Superior
Court disagreed with the reasoning of the PCRA court finding the underlying claim to
have arguable merit, but that counsel had a reasonable strategic basis for not raising

the issue.  While the Superior Court agreed that a significant sentence was warranted due to the nature and extent of the sexual offenses, the court believed that counsel could have made a colorable argument that his aggregate sentence of 105 to 210 years was manifestly excessive.  (Doc. 9, Ex. G, Pa. Super. Op. at 7.)  However, based upon appellate counsel's testimony at the PCRA evidentiary hearing explaining his reasons for not raising such a challenge on direct appeal, the court concluded that counsel had a reasonable, strategic basis for not pursuing the challenge.  (Id. at 10.)

The Pennsylvania Superior Court's conclusion rejecting Petitioner's ineffective assistance of counsel claim as to this ground is not contrary to, and did not involve an unreasonable application of federal law.  Strickland and its progeny make clear that a counsel's strategic choices will not be second guessed by post-hoc determinations that a different trial strategy may have yielded a better result.  Strickland, 466 U.S. at 689; see also Darden v. Wainwright, 477 U.S. 168 (1986).

Appellate counsel testified at the PCRA hearing that he had considered challenging the sentence on direct appeal but decided not to do so in light of the other claims he wished to raise and how, although he could win a sentencing question on principle, he could lose it on the merits.  Even if the Superior Court found it excessive, and reduced the sentence in half, in light of Petitioner's age of 42, a 52-year minimum would still amount to an effective life sentence.  Counsel reasoned that it was wiser to pick the strongest arguments to focus on rather than draw the Superior

Court's attention away from said arguments to pages devoted to an issue that would not get Petitioner out of prison any earlier.

Based on the foregoing, as supported by the record, it cannot be said that the Superior Court's conclusion that appellate counsel had a reasonable, strategic basis for not challenging the sentence on direct appeal is contrary to or involved an unreasonable application of federal law. Accordingly, habeas corpus relief on this ground is not warranted.

### 3. Trial counsel's failure to request a "prompt complaint" instruction

Petitioner contends that trial counsel was ineffective when he failed to request a "prompt complaint" jury instruction. A "prompt complaint" instruction is based on the theory that a victim of a violent assault would be expected to report the assault at the first available opportunity. The purpose of such an instruction is to allow a jury to draw a negative inference in a case where a victim fails to report the assault right away. It is Petitioner's contention that had counsel requested such an instruction, and one was given, it could have produced a doubt to the jury as to whether or not the offense occurred or whether it was a recent fabrication by the victims.

The issue was raised in the direct appeal, but the Pennsylvania Superior Court dismissed all ineffective assistance grounds without prejudice to pursue them in a PCRA petition. Petitioner thereafter raised the issue in his PCRA petition. The PCRA court found that based upon all of the evidence, the case did not warrant a

prompt complaint instruction to the jury and, as such, counsel was not ineffective for

failing to request such an instruction. The court stated that in determining whether a

"prompt complaint" instruction is proper, determinations are made pursuant to the

facts in each individual case pursuant to a subjective standard based upon the age and

condition of the victim.  Citing to Commonwealth v. Jones, 449 Pa. Super. 58, 66 n.2,

672 A.2d 1353, 1357 n.2 (1996), where a minor is the victim of a sexual assault and

may not appreciate the offensive nature of the conduct, the lack of a prompt

complaint would not necessarily justify an inference that the child was fabricating the

incident.  Other factors to be taken into consideration include whether the child

victim suffers from a mental disability or diminished capacity, and/or if the

perpetrator was in a position of confidence or authority.

The PCRA court found that examining the jury charge as a whole, "the

omission of a prompt complaint instruction did not amount to fundamental error, nor

did the absence of that charge prejudice the defendant" (Doc. 9, Ex. F at 30), and as

such counsel cannot be found to be ineffective for failing to request such an

instruction.[3]  This court's conclusion was based on the following support from the

record.  Both victims were minors with diminished mental capabilities in that they

were special education students at the time of the assaults. (Doc. 9, Ex. A, Trial Tr. at

---

[3] The Pennsylvania appellate courts affirmed the PCRA court's decision with
respect to this issue without elaboration on the basis of the comprehensive opinion
issued by the PCRA court.  (Doc. 9, Ex. G.)

30,56, 87, 110).  Further, there was plenty of evidence in the record that Petitioner used his position of confidence, authority and custodial control to manipulate and intimidate the victims from revealing the assaults, not only through threats of physical abuse, but also by telling the victims he loved them and could go to jail. (Id., at 33-34, 43, 80, 100).  The existence of this evidence coupled with the fact that the jury was given a credibility instruction regarding all witnesses (Id., at 63-68, 101), including the victims, along with the legitimate strategical reasons articulated by trial counsel during the evidentiary PCRA hearing for not having requested a "prompt complaint" instruction (Doc. 9, Ex. B at 59-61, 83-85), warrant a finding by this court that the state court decision, evaluated objectively and on the merits, did not result in an outcome that cannot reasonably be justified under Strickland.   Accordingly, habeas corpus relief on this ineffective assistance of counsel claim is denied.

### 4.  Trial counsel's failure to object/request a cautionary instruction/move for mistrial regarding the testimony of Trooper Gilgallon

Petitioner also alleges that trial counsel was ineffective in failing to object to certain testimony given at trial by Trooper Gilgallon of the Dunmore State Police Barracks who investigated the charges against Petitioner which arose in Lackawanna County.  Petitioner contends that Gilgallon attempted to bolster or vouch for the credibility of the victims.  Improper bolstering or vouching occurs (1) when the prosecution places the prestige of the government behind the witness by personal

assurances of the witness' veracity; and (2) when the prosecution indicates that

information which is not before the jury supports the witness' testimony.

Commonwealth v. Randall, 758 A.2d 669, 676 (Pa. Super. 2000), app. denied, 564

Pa. 707, 764 A.2d 1067 (2000).  The challenged testimony of Trooper Gilgallon was

in response to questioning regarding the course of the investigation and leading up to

the filing of charges.  He stated that after he received Dr. Taroli's report and

discussed it with her, he interviewed the victims and compared what they had to say

with the physical evidence/lack of physical evidence with respect to each of the

victims.  When asked to describe the next step in his investigation, Gilgallon offered

the following specific testimony which is the subject of the instant habeas corpus

challenge:

> The next step actually was to evaluate the information that I
> got from the doctor, as well as the children, and put together
> the facts which helped me determine the credibility and
> develop probable cause, which ultimately resulted in the
> arrest of the Defendant on June 14, 2000.

(Doc. 9, Ex. A, T. Tr. at 238.)  Trial counsel did not object to the testimony.

Thereafter, Trooper Warner testified with regard to the Wyoming County offenses

stating that she weighed the statements of the children and the incidents described by

them to the physical evidence outlined in Dr. Taroli's report.  Counsel did object to

this testimony on the grounds that Warner was vouching for the credibility of the

victims' statements and expressing an opinion on the defendant's guilt and requested

a mistrial.  A curative instruction was thereafter given by the trial court cautioning the jury that the fact that charges were filed is not proof of Defendant's guilt and that the purpose of both Troopers' testimony and the fact that they each filed charges was not to be considered evidence of Defendant's guilt.  The jury was further instructed that the Troopers were merely explaining the course of their investigations.

Petitioner contends that trial counsel was ineffective in not objecting immediately after Gilgallon's testimony.  He claims that the curative instruction, which followed Warner's testimony, was both insufficient and untimely to overcome the prejudice caused by Gilgallon's comments on credibility of the accounts of the victims and expression of an opinion on the guilt of Defendant, even if it was sufficient to overcome the prejudice of Warner's testimony.

In addressing this issue, the PCRA court found that the trial transcript did not indicate that Gilgallon's (or Warner's) testimony constituted improper bolstering or vouching for the victims, as the prosecution had not placed the prestige of the government behind the witnesses or indicated any information that was not before the jury that supported the witness' testimony.  Further, even if it could be found that the Troopers had expressed a personal opinion regarding the veracity of the victims, any possible resulting prejudice was eliminated by the cautionary instruction given by the trial court.  While the instruction was not given until after Warner's testimony, one day following Gilgallon's testimony, the instruction intensified an earlier cautionary

instruction given during Gilgallon's testimony[4], and there was no basis in the record for concluding that the jury ignored the cautionary instructions. On appeal, this holding was affirmed based on the reasons stated by the PCRA court.

The state court's basis for finding that Gilgallon's testimony did not constitute improper bolstering or vouching for the victims cannot be said to be unreasonable based upon the record. Even if it could, it cannot be said that the state court's inability to make a finding of prejudice on behalf of Petitioner due to counsel's failure to object to Gilgallon's testimony is unreasonable based upon the curative instructions given by the trial court, particularly the instruction following Warner's testimony. While said instruction occurred not until a day following Gilgallon's testimony, and only after an objection was made to the testimony of Warner, the state court's inability to conclude, based upon the record, that the jury ignored the cautionary instructions is not an unreasonable conclusion. Based on the foregoing, this habeas ground is without merit.

---

[4] At an earlier point during Gilgallon's testimony, counsel raised a hearsay objection to Gilgallon testifying as to notes he had received from Dr. Taroli before deciding to file charges against Petitioner. A cautionary instruction was given by the court as to what hearsay evidence is, and an explanation as to an exception to the hearsay rule regarding statements not made for the truth of the matter, for example, as in this instance, information as to what Dr. Taroli said not for the truth of the matter asserted, but just to explain why Gilgallon then followed a certain course of conduct with regard to his investigation. In addition, the court pointed out that Taroli would be testifying the following day and would be subject to cross-examination. (Doc. 9, T. Tr. at 231-35.)

### 5.  Trial counsel's failure to renew objection to Dr.
### Taroli's identification of Defendant as causer of harm

One of the grounds raised in the habeas corpus petition is that trial counsel was

ineffective for failing to renew an objection previously made, and which was

sustained, regarding the testimony of Dr. Taroli.  Dr. Taroli's medical reports

referenced the histories provided by the victims which identified Petitioner as the

individual who inflicted the gynecological injuries in question.  Trial counsel

objected to any such identification testimony, and the trial court sustained the

objection, barring Taroli from providing such testimony.  The ruling was pursuant to

Commonwealth v. Smith, 545 Pa. 487, 495-96, 681 A.2d 1288, 1292, 93 (1996),

wherein the Pennsylvania Supreme Court found that statements reflecting the identity

of the alleged perpetrator are not admissible since the identification of an abuser is

not pertinent to medical treatment and, therefore inadmissible hearsay under Pa. R.E.

803(4), the "medical treatment exception.[5] (Doc. 9, Ex. A, T. Tr. at 3-11.)

Dr. Taroli testified for quite some time.  At a later point during her testimony,

she discussed the history of the abuse as provided to her by one of the victims, T.M.P.

Taroli relayed that T.M.P. stated that her sexual abuse began when she was around 6

or 7 years of age, and that she recalled an early episode where she and the perpetrator

---

[5] This holding in <u>Smith</u> was extended to sexual abuse cases in Commonwealth
v. D.J.A., 800 A.2 965, 976 (Pa. Commw. 2002), app. denied, 857 A.2d 677 (Pa.
2004).

were riding in a red van to her grandmother's house.  (Id. at 35.)  The previous day of

trial, T.M.P.  had testified to this same information. (Id. at 30-32.)

Petitioner maintains that trial counsel was ineffective in failing to object to Dr.

Taroli's reference to T.M.P.'s statement that "she and the alleged perpetrator were

driving in a red van to her grandmother's house." The PCRA court found that Taroli's

"innocuous reference" to said statement was not "tantamount to an express

identification of the defendant as the actual abuser since Taroli's reference was to the

"alleged perpetrator" and therefore did not run afoul to Rule 803(4).  (Doc. 9, Ex. F at

27.)  More importantly, the court found that Petitioner had not demonstrated a

reasonable probability that the outcome of his trial would have been different if this

statement by Taroli had been precluded pursuant to an objection by trial counsel.

This finding cannot be viewed as unreasonable in light of the second required prong

of the Strickland test requiring a showing of prejudice to the defense.  The state

court's finding that there existed no reasonable probability the outcome of

Petitioner's trial would have been different is reasonable in light of the fact that the

victim testified to the same information the day prior to Taroli's testimony.

Accordingly, this claim of ineffectiveness must also fail.

## IV.   Conclusion

For all of the foregoing reasons, the instant petition for writ of habeas corpus

will be denied.  An appropriate Order is attached.

UNITED STATES DISTRICT COURT
FOR THE
MIDDLE DISTRICT OF PENNSYLVANIA

ROBIN PARMELEE,                          :
                                         :
              Petitioner                 :
                                         :
       v.                                :    CIVIL NO. 3:CV-07-2328
                                         :
JOSEPH PIAZZA,                           :    (Judge Kosik)
                                         :
              Respondent                 :

## O R D E R

_____**NOW, THIS 22nd DAY OF JULY, 2008,** in accordance with the foregoing

Memorandum, **IT IS HEREBY ORDERED AS FOLLOWS:**

   1.    The petition for writ of habeas corpus is **DENIED**.

   2.    Based on the court's conclusion herein, a certificate of appealability
         will not issue.

   3.    The Clerk of Court shall mark this case **CLOSED**.

*s/EDWIN M. KOSIK*
United States District Judge